Sharon Louise TAFT, Plaintiff-Respondent,

v.

Doane DERRICKS and American Family Mutual
Insurance Company, Defendants-Appellants.

Court of Appeals

*No. 99–1485. Submitted on briefs January 12, 2000.—Decided
April 4, 2000.*

2000 WI App 103

(Also reported in 613 N.W.2d 190.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Lorrie J. Franson* and *American Family Insurance Company* of Eau Claire and *Terrence M. Gherty* and *Gherty & Gherty, S.C.* of Hudson.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Charles A. Bird* and *Bird & Jacobsen* and *Robert B. Spelhaug* and *Heuel, Carlson & Spelhaug* of Rochester, Minnesota.

On behalf of appellants, there were nonparty briefs of *David J. Pliner* and *Corneille Law Group, L.L.C.,* and *H. Dale Peterson* and *Stroud, Willink & Howard, L.L.C.* of Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. Doane Derricks[1] appeals a judgment entered on a jury verdict finding him fifty-five percent at fault for injuries Sharon Taft sustained while in Derricks's employ. Taft fell from a stack of hay bales through a chute to the floor of Derricks's barn. Derricks contends that the trial court erred by instructing the jury to find him negligent if he violated the general duty clause of the Occupational, Safety and Health Act (OSHA).[2] Derricks also claims that the trial court erred by refusing to hold that Taft's voluntary confrontation of an open and obvious danger makes her more negligent than Derricks as a matter of law.

¶ 2. We conclude that the trial court erred by instructing the jury under OSHA's general duty clause

---

[1] Derricks's insurer, American Family Mutual Insurance Company, also appeals the judgment. We will refer to them collectively as Derricks.

[2] 29 U.S.C. § 654(a)(1) (1994). All references to the United States Code are to the 1994 version.

to define the standard of care that Derricks owed Taft. Wisconsin law requires that before a statutory violation may constitute negligence per se, there must be some expression of legislative intent that the statute may provide a basis for imposing civil liability. Congress's intent, as evidenced by 29 U.S.C. § 653(b)(4), was that the general duty clause be part of a regulatory scheme and not a negligence standard modifying common law. OSHA's general duty clause is thus not a safety law intended to be the basis for imposing tort liability.

¶ 3. We also conclude that the trial court did not err by ruling that Taft was not, as a matter law, more negligent than Derricks for climbing the hay bales while the chute was open. Factual issues exist concerning whether Taft voluntarily confronted an open and obvious danger. Accordingly, we affirm in part, reverse in part and remand for a new trial on the issue of liability.

## FACTS

¶ 4. Derricks is a farmer for whom Taft performed various chores, including milking and feeding his cows.[3] Taft owned horses and would therefore often take hay as payment for her labor. On the date of her injury, Taft went to Derricks's farm to get hay for her horses. This hay was located on the east side of the haymow.[4] Derricks saw her and asked her to throw

---

[3] Although it is conceded on appeal that Taft was acting within the course of her employment with Derricks, the Worker's Compensation Act is not relevant to this action. *See* WIS. STAT. § 102.04 (1997–98). All references to Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[4] The haymow is that portion of the barn where hay is stored. Different grades of hay were located in different areas of

down some hay from the southeast corner of the haymow for his heifers and calves.

¶ 5. When Taft entered the barn, she observed a new delivery of bales of bedding hay stacked to create a fifteen-foot wall, going all the way to the rafters in the center of the haymow. The bales were stacked in such a manner that she could not get into the haymow through the barn's doors.

¶ 6. Taft testified that she was aware of only one other way to access the haymow: to enter the barn through the milking area and climb a ladder through a chute in the southwest corner of the haymow floor. She would then have to climb the hay bale wall to get to the east side of the haymow to throw down hay for herself and Derricks. Taft also testified that Derricks told her that the only way to get into the haymow on that date was through the chute in the southwest corner.

¶ 7. Taft entered the haymow's west side through the chute and threw some of the high quality hay down from the west side. She then climbed up the fifteen-foot wall of hay bales to get to the haymow's east side. While either walking on top of or descending from the hay bale wall, she fell to the haymow floor and then through a chute on the east side of the haymow to the barn floor below. The chute she fell through was an unguarded opening in the haymow floor that allowed bales to be dropped to the floor of the milking area. She sustained injuries as a result of the fall.

¶ 8. Taft sued Derricks, claiming that he negligently failed to maintain a safe premises, warn of hidden dangers or take reasonable steps to protect her from harm. Several times during the proceedings, Derricks asked the court to find Taft more negligent as a

the haymow. Taft's horses ate lower quality hay than calves or milking cows.

matter of law because she voluntarily confronted the open and obvious danger of falling from the hay bales and through the unguarded chute. He made the request initially in a summary judgment motion and later in motions for directed verdict and judgment notwithstanding the verdict. The trial court refused to grant Derricks judgment on that basis.

¶ 9. At trial, the court's instruction to the jury regarding the standard of care that Derricks owed Taft was derived from OSHA's general duty clause.[5] The instruction advised the jury:

> Each employer shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees.
>
> A hazard is a recognized hazard if it is proven that the employer had actual knowledge that a given condition was hazardous. Such knowledge may be shown by evidence that the employer told employees to be careful near or around the hazard, were told to stay away from the hazard, or were warned of a particular hazard.
>
> . . . .
>
> If you find that the employment or the plaintiff's place of employment was not free from recognized hazards, as I have earlier defined that phrase, then you must find Doane Derricks was negligent.

[5] 29 U.S.C. § 654(a)(1), the general duty clause, provides:

(a) Each employer—

(1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees[.]

28

Derricks objected to the instruction. The jury found Taft to be 45%, and Derricks 55% at fault. The court entered judgment on the jury verdict and denied Derricks's post-verdict motions.

## ANALYSIS

¶ 10. We first address Derricks's assertion that the trial court erred by instructing the jury that a violation of the general duty clause constitutes negligence per se. That inquiry addresses the standard of care Derricks owed to Taft. The second issue is whether Taft's negligence, as a matter of law, exceeds Derricks's. These are questions of law that we decide independently, without deference to the trial court's decision. *See Rolph v. EBI Cos.*, 159 Wis. 2d 518, 528, 464 N.W.2d 667 (1991).

### 1. NEGLIGENCE PER SE

¶ 11. Normally, "[a] party is negligent when he [or she] commits an act when some harm to someone is foreseeable." *Id.* at 532. "[T]he particular conduct of a defendant is not examined in terms of whether or not there is a duty to do a specific act, but rather whether the conduct satisfied the duty placed upon individuals to exercise that degree of care as would be exercised by a reasonable person under the circumstances." *McNeese v. Pier*, 174 Wis. 2d 624, 631, 497 N.W.2d 124 (1993). Negligence per se arises when the legislature defines a person's standard of care in specific instances. "When a statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard for all

29

members of the community, from which it is negligence to deviate." *See Burke v. Milwaukee & Suburban Trans. Corp.*, 39 Wis. 2d 682, 689, 159 N.W.2d 700 (1968). Wisconsin courts have said that in negligence per se cases, foreseeability is not an element of negligence. That is, the defendant is foreclosed upon the question of foreseeability or reasonable anticipation. *See Dippel v. Sciano*, 37 Wis. 2d 443, 461–62, 155 N.W.2d 55 (1967). When conduct is negligent per se, the legislature has substituted its judgment for that of the jury for purposes of determining the defendant's standard of care. *See id.* Thus, the only issues are whether the statute has been violated, causation and damages.

¶ 12. Wisconsin courts have set limitations on whether a statutory violation will constitute negligence per se. Our supreme court recently reaffirmed those limitations, which are:

> (1) the harm inflicted was the type the statute was designed to prevent; (2) the person injured was within the class of persons sought to be protected; and (3) there is some expression of legislative intent that the statute become a basis for the imposition of civil liability.

*Antwaun A. v. Heritage Mut. Ins. Co.*, 228 Wis. 2d 44, 66–67, 596 N.W.2d 456 (1999). All three questions must be answered affirmatively before the statutory violation will constitute negligence per se. *See id.*

¶ 13. Because Derricks's argument focuses on the third requirement, we limit our examination to whether there is some expression of legislative intent that OSHA become a basis for the imposition of civil liability. *Antwaun A.* stated:

30

> This court has repeatedly indicated that a statute will not be interpreted to impose a greater duty than that imposed by the common law unless it clearly and beyond any reasonable doubt expresses such purpose by language that is clear, unambiguous, and peremptory.

*Id.* at 67. "[T]he requisite intent may be supplied by necessary implication from the language of the statute." *Nordeen v. Hammerlund*, 132 Wis. 2d 164, 168–69, 389 N.W.2d 878 (Ct. App. 1986).

¶ 14. Taft argues that Derricks's violation of the general duty clause constituted negligence per se. As indicated above, the general duty clause provides, in part: "Each employer shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees[.]" 29 U.S.C. § 654(a)(1). She contends that OSHA is a safety law that Congress intended to apply to all employers to protect their employees. She also claims that the language of the statute itself evidences Congress's intent that it be the basis for imposing civil liability. Accordingly, she asserts the general duty clause could be used to establish Derricks's standard of care.[6]

¶ 15. Derricks contends that a violation of the general duty clause cannot constitute negligence per se because there is no expression of legislative intent that

[6] Taft also claims that Derricks waived any error concerning the negligence per se instructions by failing to raise it in post-trial motions. We reject her assertion of waiver. Derricks not only objected to the jury instructions at the instruction conference as required by WIS. STAT. § 805.13(3), but also argued in his post-verdict motions that the OSHA-based instruction was erroneous.

it become a basis for the imposition of civil liability. Indeed, he directs our attention to 29 U.S.C. § 653(b)(4), which he contends demonstrates Congress's express intent that OSHA *not* be used to impose a higher standard of care in tort cases. We agree with Derricks.

¶ 16. 29 U.S.C. § 653(b)(4) provides:

Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

Congress thus expressly prohibits construing OSHA to enlarge, diminish or affect in any other manner the common law duties or liabilities of employers.

¶ 17. The jury instruction at issue enlarged and otherwise affected Derricks's common law duties and obligations as an employer. Under the common law, Derricks had the duty of a reasonable farmer to exercise a degree of care that the great mass of humankind exercises under the same or similar conditions. *See* WIS JI—CIVIL 1019. He would be free to argue that the harm was not foreseeable. He could also introduce evidence of the custom or practice within the farming industry to assist the jury in determining whether he exercised ordinary care. *See* WIS JI—CIVIL 1019.

¶ 18. In contrast, under the general duty clause, Derricks had the duty to furnish a place of employment "free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees[.]" 29 U.S.C. § 654(a)(1). Derricks would be

unable to argue foreseeability, and evidence of the custom and practice within the farming industry could be irrelevant. *See Donovan v. Missouri Farmers Ass'n*, 674 F.2d 690, 692 (8th Cir. 1982). Under the instructions as framed, at a minimum, instructing the jury that a violation of the general duty clause constitutes negligence per se affects the employer's common law duties and liability. Derricks could comply with the common-law standard and still be liable because he violated the general duty clause.

¶ 19. Because 29 U.S.C. § 653(b)(4) expressly prohibits using OSHA to enlarge or affect in any manner the common law duties and obligations of employers, the legislative intent requirement for using the statute to impose civil liability is lacking. Thus, violation of the general duty clause may not constitute negligence per se.

¶ 20. Our conclusion is in accord with the substantial weight of state and federal authority holding that a violation of an OSHA standard is not negligence per se. The courts reason that 29 U.S.C. § 653(b)(4)'s "enlarge or diminish or affect" prohibition precludes using OSHA standards for the purposes of negligence per se. *See, e.g., Ries v. National R.R. Passenger Corp.*, 960 F.2d 1156 (3rd Cir. 1992); *Canape v. Peterson*, 897 P.2d 762 (Colo. 1995); *Wendland v. Ridgefield Constr. Servs.*, 439 A.2d 954 (Conn. 1981).

¶ 21. The *Wendland* court stated:

A negligence per se instruction transforms the character of the factfinder's inquiry. The applicable standard of care is affected by such an instruction. Because the standard of care is the key factor in determining liability, we conclude that the application of a negligence per se instruction affects common law rights, duties and liabilities of employ-

> ers and employees with respect to injuries of
> employees arising out of and in the course of
> employment as those terms are used in 29 U.S.C. s
> 653(b)(4) and General Statutes s 31–369(b). Thus,
> the negligence per se instruction was erroneous.

*Id.* at 956–57.

¶ 22. We conclude that the general duty clause is part of a regulatory regime, not a negligence standard to be applied at common law in courts of general jurisdiction. OSHA contains an elaborate system of penalties, enforceable by OSHA's federal inspectors and before administrative law judges. *See* 29 U.S.C. §§ 658 to 666. An OSHA violation does not create a private cause of action. *See Ellis v. Chase Communications*, 63 F.3d 473, 477 (6th Cir. 1995). "T[ ]he purpose of OSHA is preventive rather than compensatory." *Ries*, 960 F.2d at 1164. We see no legislative expression that a general duty clause violation become the basis for imposing civil liability.

█

¶ 23. Derricks's status as a small farmer also influences our rejection of the claim that his violation of an OSHA standard constitutes negligence per se. Congress has repeatedly enacted legislation that prohibits federal funds from being used to prescribe, issue, administer or enforce any OSHA standard, rule, regulation or order that is applicable to a farming operation that does not maintain a temporary labor camp and employs ten or fewer employees. *See* Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104–208, § 101 (e), 110 Stat. 3009, 3009–239. Thus, a small family farmer like Derricks is not subject to OSHA enforcement of either the specific standards or the general duty clause. The appropriation riders further

34

inform on Congress's intent to insulate farmers from OSHA.[7]

## 2. OPEN AND OBVIOUS DANGER

¶ 24. Derricks contends that the open and obvious danger doctrine applies to foreclose Taft's recovery. He claims that Taft voluntarily encountered the danger of falling from the hay bales and through the chute. He contends that there were other ways for her to get into the east side of the barn that would not have required climbing the wall of hay bales. Taft responds that she did not voluntarily confront a dangerous condition, but rather did as instructed by her employer and took the only route she was aware of to access the haymow's east side. In *Rockweit v. Senecal*, 197 Wis. 2d 409, 541 N.W.2d 742 (1995), the supreme court said:

> Our decisions in *Pagelsdorf* [*v. Safeco Ins. Co.*, 91 Wis. 2d 734, 284 N.W.2d 55 (1979)] and *Antoniewicz v. Reszczynski*, 70 Wis. 2d 836, 236 N.W.2d 1 (1975) abrogated the common law immunity by subsuming the concept of open and obvious danger into the consideration of common law negligence. In the ordinary negligence case, if an open and obvious danger is confronted by the plaintiff, it is merely an element to be considered by the jury in apportioning negligence and will not operate to completely bar the plaintiff's recovery.

*Id.* at 422–23.[8]

---

[7] Similarly, the Wisconsin legislature has excluded small farms from safety regulations in other contexts. *See, e.g.,* WIS. STAT. § 101.01(11) (farmers exempt from the safe place of employment statute).

[8] Although there is dicta in *Hansen v. New Holland N. Am.*, 215 Wis. 2d 655, 574 N.W.2d 250 (Ct. App. 1997), which notes

¶ 25. The instances in which a court may rule, as a matter of law, that the plaintiff's negligence exceeds the defendant's are extremely rare. *See Huss v. Yale Materials Handling Corp.*, 196 Wis. 2d 515, 534, 538 N.W.2d 630 (Ct. App. 1995). "The apportionment of negligence is a matter that rests within the sound discretion of a jury based upon the inferences it draws from the evidence presented, together with its determination as to the standard of care required of the parties." *Id.* at 535. It is also the jury's province to fairly resolve conflicts in testimony and weigh the evidence. *See State v. O'Brien*, 223 Wis. 2d 303, 326, 588 N.W.2d 8 (1999).

¶ 26. Neither party discusses the meaning of voluntariness in the context of the law on open and obvious danger. Our prior case law suggests a meaning that focuses on whether the plaintiff has a reasonable alternative. *See, e.g., Maci v. State Farm Fire & Cas. Co.*, 105 Wis. 2d 710, 717, 314 N.W.2d 914 (Ct. App. 1981). If the plaintiff, despite the obviousness of the danger, is faced with no reasonable alternative, the plaintiff does not "voluntarily confront" the danger. *See id.* The courts have considered whether the plaintiff was under some compulsion to encounter the danger. *Compare Maci*, 105 Wis. 2d at 717 (plaintiff followed his landlord's instructions and encountered danger), *with Griebler v. Doughboy Recreational*, 160 Wis. 2d 547, 551, 466 N.W.2d 897 (1991) (plaintiff dove headfirst into water of unknown depth).

that "in the context of manufacturer-consumer strict liability and landowner cases a defendant *may* still owe no duty to a plaintiff who confronts a danger that is open and obvious, that rule is of limited applicability." *Id.* at 668 (emphasis added). The rule did not apply in *Hansen*, nor does it apply here.

¶ 27. We conclude that whether Taft's negligence exceeded Derricks's presented a fact question that a jury should resolve. Taft testified that she knew of no other way to get to the haymow's east side and that Derricks told her the only way into the haymow was through the route she took. A jury could infer that Taft had to comply with her employer's instructions, and the employer dictated the manner by which the work was to be done, foreclosing other means.

¶ 28. Further, neither of the cases Derricks cited persuades us that Taft's negligence exceeded his as a matter of law. Derricks directs us to *Sparish v. Zappa*, 273 Wis. 195, 200, 77 N.W.2d 416 (1956), and *Frei v. Frei*, 263 Wis. 430, 434, 57 N.W.2d 731 (1953), in which the supreme court concluded that the plaintiffs were more negligent as a matter of law than the defendants, and denied recovery. In *Sparish*, the plaintiff was attempting to repair a farm machine when his foot slipped into a nearby silage blower. *See id.* at 196. The plaintiff in *Frei* had finished clearing an obstruction out of a corn husker and picker. When he returned to the front of the machine to pick up fallen corn, his arm became entangled in chains on the picker, causing injury. *See id.* at 432–33. In both cases, the supreme court emphasized that the plaintiff was not only aware of the dangers involved, but knew of safer ways to accomplish the task they were performing. *See Sparish*, 273 Wis. at 200; *Frei*, 263 Wis. at 434. In the instant case, again, Taft testified that she knew of no other way to access the haymow's east side. Derricks's authorities are therefore inapposite.[9]

---

[9] Derricks also claims the trial court erred by precluding him from introducing evidence of Taft's medication and seizure disorders. Nowhere, however, does Derricks explain how the trial court exercised its discretion by excluding this evidence or

¶ 29. We conclude that the trial court erred by instructing the jury under OSHA's general duty clause to define the standard of care that Derricks owed Taft. Wisconsin law requires there be some expression of legislative intent that a statute become a basis for the imposition of civil liability before a violation may constitute negligence per se. Congress intended the general duty clause to be part of a regulatory scheme and not a negligence standard that modifies common law. OSHA's general duty clause is not a safety law intended to be the basis for imposing tort liability.

¶ 30. We also conclude that the trial court appropriately declined to rule that Taft was more negligent than Derricks as a matter of law. There are factual issues concerning whether Taft voluntarily confronted an open and obvious danger. Those factual issues preclude the determination of her negligence vis-à-vis Derricks's as a matter of law. Accordingly, we reverse in part, affirm in part and remand for a new trial on the issue of liability.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions. No costs on appeal.

---

why such exercise was erroneous. The argument is undeveloped, and we will not consider it on appeal. *See State v. Gulrud,* 140 Wis. 2d 721, 730, 412 N.W.2d 139 (Ct. App. 1987).